# UNITED STATES v. LAMPKIN.

### No. 7520—J—Criminal.

District Court, S. D. Florida, Jacksonville Division.

June 19, 1946.

822

Herbert S. Phillips, U. S. Atty. of Tampa, Fla., for the Government.

J. Ollie Edmunds, of Jacksonville, Fla., for defendant Lampkin.

DE VANE, District Judge.

The United States Attorney filed in this Court a petition praying that respondent, Oscar T. Lampkin, alias James Oscar Lampkin, be adjudged in contempt of this Court in consequence of his contemptuous and obstructive conduct and false swearing in answering questions propounded to him, touching his qualifications to serve as a juror of this Court, and particularly to serve as a juror in the trial of defendants named in four certain indictments which were consolidated for trial by order of court and in which trial respondent was accepted and served as a juror.

The petition alleges that, when the court examined the respondent along with other prospective jurors, touching their qualifications to serve as jurors of this court, that in response to the question: "Have any of you ever been convicted of bribery, forgery, perjury, larceny or other crime?" the respondent answered, "No"; that later when the defendants named in the four consolidated indictments were placed on trial and the court was then selecting a jury to try said defendants, in answer to the same question propounded to him by the presiding Judge at said trial, the respondent again answered, "No"; and that still later when being examined by the United States Attorney touching his qualifications to sit on the jury being selected to try the defendants named in the criminal indictments aforesaid, in answer to a question propounded to him by the United States Attorney, as follows: "Have you

ever had any trouble with the Government?" the respondent answered, "No. Sir," and to the further question: "One way or the other?" the respondent again answered, "No."

The United States Attorney, in the petition filed in this case, sets out in some detail, which it is unnecessary to repeat here, the extent to which both the Judge who qualified the jury to serve during the term of Court, and the Judge who presided at the trial of the defendants named in the aforementioned indictments, endeavored to ascertain from each juror whether he had ever been convicted of a crime, and asserts that a truthful answer to these questions was essential to a fair trial of the criminal cases to be tried at that term of court.

The petition further alleges that the respondent, on November 29, 1938, had been charged jointly with others in an information in the United States District Court, in and for the Eastern District of New York, with "Mutiny," on the Steamship Algic, on the high seas, and that respondent had entered a plea of guilty to the third count of said information under the name of James Oscar Lampkin, and that he was sentenced by the Judge of the United States District Court, in and for the Eastern District of New York, after he had entered a plea of guilty, to be imprisoned in the Detention Headquarters in New York City, for a period of thirty days, on said third count of said information.

Respondent, in his return, admits all the material factual allegations of the petition, but denies wilful intent on his part to answer falsely any material question propounded to him by the Court or by the United States Attorney or any other party. By way of confession and avoidance he sets out in his return that when he entered his plea of guilty to the information filed against him in the United States District Court, in and for the Eastern District of New York, he was then and there advised by the United States Attorney and by his counsel that the offense to which he was pleading guilty, being only a misdemeanor, would not in any manner affect any of his civil rights or disqualify

him from voting or serving as a juror in any of the courts of the land. He sets out further that after moving his residence to Jacksonville, Florida, when presenting himself to the Supervisor of Registration, in and for Duval County, Florida, for the purpose of registering as a voter, he informed the Supervisor of Registration of the fact that he had entered a plea of guilty to a misdemeanor in New York City, prior to moving to Florida, and was advised that the same did not disqualify him to vote; that he, therefore, registered and has since been a qualified voter in Duval County, Florida. He further sets out in his return that in September, 1940, he served as a member of the Grand Jury in this court, and that when he answered the questions touching his prior criminal record it was his belief that the questions related only to whether or not he had been convicted of a felony and that he was laboring under the misapprehension that it was not necessary for him to disclose to the court or counsel for the Government or the defense, that he had been convicted of a misdemeanor.

It is upon these facts that the respondent denies that his conduct was wilful or contemptuous and he prays that he be discharged from the Rule.

The Supreme Court has held (Ex parte Hudgings, 249 U.S. 378, 382, 39 S.Ct. 337, 63 L.Ed. 656, 11 A.L.R. 333) that perjury committed by a witness in the presence of a court is not sufficient to hold the witness in contempt. But as the same court pointed out in Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 468, 77 L.Ed. 993:

"There is a distinction not to be ignored between deceit by a witness and deceit by a talesman. A talesman, when accepted as a juror, becomes a member of the court. In re Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150; United States v. Dachis, D.C., 36 F.2d 601. The judge who examines on the voir dire is engaged in the process of organizing the court. If the answers to the questions are willfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only. His relation to the court and to the parties is tainted in its origin; it is a mere pretense and sham.

What was sought to be attained was the choice of an impartial arbiter."

In a very recent decision, Matter of Michael, 66 S.Ct. 78, the Supreme Court, by way of obiter dicta, held that false swearing alone would not justify the exertion of the contempt power of the court. There must be added to the essential element of perjury, under the general law, the further element of obstruction to the Court in the performance of its duty.

We are not here concerned with the conduct of the respondent after he was selected as a juror to try the defendants on the aforementioned indictments. We are limited by the petition filed by the Government to the question whether Lampkin was guilty of contempt of court because of the answers he gave to questions touching his qualifications to serve as a juror. If his answers were so false or deceptive as to obstruct the Court in the performance of its duty, such false swearing was contempt of court for which respondent may be punished.

The answers to the questions propounded to the respondent when he was examined touching his general qualifications for jury duty, while false, did not obstruct the court in the performance of its duty. The reason for this lies in the fact that the matter regarding which respondent gave false answer did not disqualify him for jury duty. Therefore, under the recent decision, referred to last above, such false answer did not constitute contempt of court.

However, when the respondent was being examined regarding his qualifications to serve as a juror in the trial of the defendants on the four consolidated criminal indictments, mentioned above, his false answers to the questions then propounded to him present an entirely different question.

In a jury trial, if justice is to be even approximated, the jurors must be absolutely impartial and fair-minded and be governed by the evidence which is given by the witnesses sworn and examined before them, and by the law as stated by the court. The purpose of the examination

of each juror, touching his qualifications, is to enable the court and the interested parties to ascertain whether a cause for challenge exists and whether it is advisable to exercise the right of challenging a juror, peremptorily or otherwise. The reason the law gives to each party peremptory challenges is to enable both sides in the trial of the lawsuit to secure a jury which all may feel is reasonably free, among other things, from any bias or prejudice. It may fairly be said to be the rule that a juror owes the duty to the court and to those who are interested in the case being tried, where he is being examined touching his qualifications to serve as a juror, to answer truthfully, fully and fairly all questions asked upon the examination to determine his qualifications to serve as a fair and impartial juror, to the end that challenges may be intelligently exercised and unsuitable persons may be excused from serving as jurors, in the case. The juror should, of course, whether specifically questioned or not, disclose any material information which might bear upon his qualifications, but it would not do to find a juror guilty of contempt for failing to do so where no question was asked, which would fairly call the matter to the juror's attention. However, where the questions are asked it is not within the province of the juror to determine the relevancy of the matter inquired about and it is his duty to .make truthful answers to such questions. without evasion, equivocations or concealment.

The record in this case shows the care with which the court sought to determine whether any prospective juror had ever been charged, prosecuted or convicted of any offense and if a true disclosure of the facts mentioned had been made by the respondent it may have led to the exercise of the right to challenge him. The concealing of these facts from the court and the parties was an obstruction to the court in the performance of its duty, in its effort to secure a jury which all could feel was reasonably free from bias and prejudice in the trial of the pending cases.

A juror does not possess the right to pass upon the question of what is or what is not deemed material by the court, or the litigants, touching his qualifications to serve in a particular case. That prerogative rests with the Court.

It is the duty of a juror to make full and truthful answers to all questions propounded to him touching his qualifications to serve as a juror in any case, since full knowledge of all material relevant matters is essential to the fair and just exercise of the right to challenge, either preremptorily or otherwise. A juror who falsely conceals a material fact relevant to his qualifications is guilty of such misconduct as is prejudicial and obstructive to the fair administration of justice in our courts. If the time ever comes when the court is deprived of the power to make prospective jurors truthfully disclose material facts regarding themselves and their qualifications to serve as fair and impartial jurors, effective administration of justice will be greatly impeded.

. [5] There is no claim made in this case that the respondent had any ulterior motive as a partisan for the defendants on the trial in 'the particular cases then being tried, or that he had any other purpose in concealing his prior criminal record other than his reluctance to have it known in the community where he now resides. However, a disclaimer of any intent to obstruct the court does not purge the contempt. Our conclusion is that Oscar T. Lampkin, alias James Oscar Lampkin, is guilty of contempt of court to the extent herein stated. We, therefore, adjudge the respondent in contempt of court.

While his conduct was reprehensible, we recognize that this proceeding against him has carried with it its own punishment. The very thing has happened that respondent sought to conceal, but. which he could have freely admitted at the time with less embarrassment to himself and without obstruction to the court in the performance of its duty. But in this case the court must determine what penalty should be imposed as a punishment for the contempt in order to maintain the dignity of this court and its reputation as an institution.

It is the judgment and sentence of this Court that Oscar T. Lampkin, alias James Oscar Lampkin, as punishment for the contempt of this Court, of which he has been found guilty, be confined in the County Jail of Duval County, Florida, for a period of thirty (30) days, and that he pay unto the United States of America a fine of Five Hundred ($500) Dollars. The execution of the jail sentence hereby imposed is suspended upon the payment of said fine.

STRUM, District Judge, concurs.